IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| **HUMAN RIGHTS DEFENSE CENTER,**<br><br>     **Plaintiff,**<br><br>v.<br><br>**IRWIN CARMICHAEL, Sheriff of Mecklenburg County; TELISA E. WHITE; AUJIENA HICKS; DAVID HILL; JEFF EASON; and DOES 1-10; all in their official and individual capacities,**<br><br>     **Defendants.** | **Case No.** 3:18-cv-218<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

1. Plaintiff, Human Rights Defense Center ("HRDC" or "Plaintiff"), for its complaint against Defendants, alleges and states as follows:

### I. INTRODUCTION

2. HRDC brings this action to enjoin censorship of its publications mailed to prisoners at Mecklenburg County Jail – Central (MCJ-C) and Mecklenburg County Jail – North (MCJ-N) (collectively referred to herein as the Mecklenburg County Jail or "Jail"), in violation of the First and Fourteenth Amendments to the United States Constitution. Defendants' policies and practices prohibit delivery of mail from Plaintiff, fail to provide notice of and an opportunity to challenge each instance of censorship, and deny Plaintiff equal protection under the law as required under the United States Constitution.

### II. JURISDICTION AND VENUE

3. This Court has jurisdiction to hear this action under 28 U.S.C. § 1331 (federal question), as this action arises under the Constitution and laws of the United States. The Court also has jurisdiction under 28 U.S.C. § 1343 (civil rights), as this action seeks redress for civil rights violations under 42 U.S.C. § 1983.

4. Venue is proper under 28 U.S.C. § 1391(b). At least one Defendant resides within this judicial district, and the events giving rise to the claims asserted herein all occurred within this judicial district.

5. Plaintiff's claims for relief are predicated upon 42 U.S.C. § 1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges and immunities secured to the Plaintiff by the First, Fifth, and Fourteenth Amendments to the U.S. Constitution and laws of the United States.

6. This Court has jurisdiction over claims seeking declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, and Rules 57 and 65 of the Federal Rules of Civil Procedure, as well as claims for nominal and compensatory damages, against all Defendants.

7. Plaintiff's claim for attorneys' fees and costs is predicated upon 42 U.S.C. § 1988.

8. Plaintiff is informed, believes, and therefore alleges that in engaging in the conduct alleged herein, Defendants acted with the intent to deprive Plaintiff of its constitutional rights, and/or with reckless or callous indifference toward Plaintiff's federally protected rights.

9. As a result of the forgoing, Plaintiff seeks compensatory and punitive damages against the individual Defendants.

### III. PARTIES

10. HRDC is a not-for-profit charitable organization recognized under § 501(c)(3) of the Internal Revenue Code, incorporated in the state of Washington and with principal offices in Lake Worth, Florida. Prison Legal News is a wholly owned project and the publishing arm of the HRDC. The purpose of HRDC, as stated in its Articles of Incorporation, is to educate prisoners and the public about the destructive nature of racism, sexism, and the economic and social costs of prisons to society. HRDC, through its publishing project, engages in core

2

protected speech and expressive conduct on matters of public concern, such as the operation of prison facilities, prison conditions, prisoner health and safety, and prisoner rights. Plaintiff's publications contain political speech and social commentary, which are core First Amendment rights and are entitled to the highest protection afforded by the U.S. Constitution. For more than 28 years, the focus of HRDC's mission has been on public education, advocacy, and outreach on behalf of prisoners. HRDC also assists prisoners who seek legal redress for infringements of their constitutionally guaranteed and other basic human rights. HRDC's mission, if realized, has a salutary effect on public safety.

11. Defendant Irwin Carmichael is the sheriff of Mecklenburg County, North Carolina. He is responsible for overseeing the management and operations of the Mecklenburg County Jail, and for the hiring, screening, training, retention, supervision, discipline, counseling, and control of detention center personnel who interpret and apply the mail policy for prisoners. As sheriff, Defendant Carmichael is a final policymaker with respect to the operations of the Jail, including for policies governing incoming mail for inmates. He is sued in his individual and official capacities.

12. Defendant Telisa E. White is a major with the Mecklenburg County Sheriff's Office (MCSO). She is employed by and is an agent of the MSCO. She is currently the facility commander for Mecklenburg County Jail – Central, and is sued in her individual and official capacities. At all times relevant, she acted under color of state law. Defendant White is responsible for the implementation of all jail policies at MCJ-C, including the inmate mail policies challenged herein, and for the hiring, screening, training, retention, supervision, discipline, counseling, and control of the personnel of MCJ-C who interpret and apply the mail policy for prisoners.

13. Defendant Aujiena Hicks is a captain with the MCSO. She is employed by and is an agent of the MSCO. She is currently the administrative captain for Mecklenburg County Jail – Central, and is sued in her individual and official capacities. At all times relevant, she acted under color of state law. Defendant Hicks reports to Defendant White and supervises and manages MCJ-C operations, including the mailroom staff and the inspection and routing of all incoming prisoner mail to MCJ-C.

14. Defendant David Hill is a major with the MCSO. He is employed by and is an agent of the MSCO. He is currently the facility commander for Mecklenburg County Jail – North, and is sued in his individual and official capacities. At all times relevant, he acted under color of state law. Defendant Hill is responsible for the implementation of all jail policies at MCJ-N, including the inmate mail policies challenged herein, and for the hiring, screening, training, retention, supervision, discipline, counseling, and control of the personnel of MCJ-N who interpret and apply the mail policy for prisoners.

15. Defendant Jeff Eason is a captain with the MCSO. He is employed by and is an agent of the MSCO. He is currently the administrative captain for Mecklenburg County Jail – North, and is sued in his individual and official capacities. At all times relevant, he acted under color of state law. Defendant Eason reports to Defendant Hill and supervises and manages MCJ-N operations, including the mailroom staff and the inspection and routing of all incoming prisoner mail to MCJ-N.

16. The true names and identities of Defendants DOES 1 through 10 are presently unknown to HRDC. Each of Defendants DOES 1 through 10 are or were employed by and are or were agents of Defendants when some or all of the challenged prisoner mail policies and practices were adopted and/or implemented. Each of Defendants DOES 1 through 10 are or

4

Case 3:18-cv-00218-GCM   Document 1   Filed 04/24/18   Page 4 of 19

were personally involved in the adoption and/or implementation of the mail policies for prisoners, and/or are or were responsible for the hiring, screening, training, retention, supervision, discipline, counseling, and/or control of Jail staff who interpret and implement these prisoner mail policies. They are sued in their individual and official capacities. HRDC will seek to amend this Complaint as soon as the true names and identities of Defendants DOES 1 through 10 have been ascertained.

17. At all times material to this action, the actions of all Defendants as alleged herein were taken under the color of state law.

## IV. FACTUAL ALLEGATIONS

### A. HRDC's Mission and Outreach to the Mecklenburg County Jail

18. HRDC, through its publication project, Prison Legal News, publishes and distributes a softcover monthly magazine titled *Prison Legal News: Dedicated to Protecting Human Rights*, which contains news and analysis about detention facilities, prisoners' rights, court opinions, management of prison facilities, prison conditions, and other matters pertaining to the rights and/or interests of incarcerated individuals. The monthly magazine is published on newsprint and is 72 pages in length. HRDC has thousands of subscribers to its monthly magazine in the United States and abroad, including prisoners, judges, attorneys, journalists, public libraries, and members of the general public.

19. HRDC also publishes a second monthly magazine, *Criminal Legal News*. This magazine focuses on review and analysis of policing, criminal procedure, court rulings, and news concerning criminal justice-related issues.

20. HRDC, through its publication project, also publishes and/or distributes approximately 50 different softcover books about the criminal justice system, legal reference

5

Case 3:18-cv-00218-GCM  Document 1  Filed 04/24/18  Page 5 of 19

books, and self-help books of interest to prisoners. These books are designed to foster a better understanding of criminal justice policies and to allow prisoners to educate themselves about related issues, such as legal research, how to write a business letter, health care issues, and similar topics. Pertinent to this case, HRDC publishes and distributes *The Habeas Citebook: Ineffective Assistance of Counsel* ("*Habeas Citebook*"), which describes the procedural and substantive complexities of federal habeas corpus litigation to aid in identifying and litigating claims including ineffective assistance of counsel, and the *Prisoners' Guerilla Handbook: A Guide to Correspondence Programs in the United States and Canada* ("*Prisoners' Handbook*"), which provides information to prisoners on enrolling at accredited higher educational, vocational, and training schools.

21. In addition to monthly journal issues and books, HRDC also sends prisoners: (a) informational packets that contain a subscription list and order form, a book list, and a published-books brochure (each of which is a single page of copy); and (b) copies of judicial opinions that are relevant to prisoners.

22. HRDC has thousands of subscribers in the United States and abroad, including prisoners, attorneys, journalists, public libraries, judges, and members of the general public. Since its creation in 1990, HRDC has sent its publications to prisoners and law librarians in more than 3,000 correctional facilities located across all 50 states, including facilities operated by the North Carolina Department of Public Safety, and those operated by the Federal Bureau of Prisons. These include the Federal Correctional Complex in Butner, North Carolina, and the Administrative Maximum ("ADX") "Supermax" facility at Florence, Colorado—the most secure prison in the United States.

**B. Defendants' Mail Policy**

Defendants' mail policy, which is displayed on the sheriff's website, provides, in pertinent part:

**************

- Incoming certified or registered mail that requires a signature for receipt WILL NOT be accepted.
- Incoming mail must have the inmate's first and last name and PID number on the correspondence.
- Upon request, indigent inmates will receive postage and stationery through the Inmate commissary system.
- Books, magazines, newspapers, or periodicals will be accepted only if they are sent directly from a bookstore or publisher. Such materials MUST be accompanied by an invoice.
- ALL INMATES WHO RECEIVE MORE THAN THE ALLOTTED AMOUNT OF BOOKS AND MAGAZINES A DAY WILL BE RETURNED TO THE SENDER. HARDBACK BOOKS ARE NOT ALLOWED. Inmates are only allowed five (5) books and five (5) magazines in their cells at any given time. This includes Religious and Legal texts. (ALL EXCESS MUST BE SENT OUT AND WILL NO LONGER BE HELD IN PROPERTY)
- Legal mail is exempt from standard procedures for inspection. The Housing Supervisor will open all legal mail in the presence of the inmate to check for contraband
- All incoming mail must have a return address, or it will be marked as dead mail and returned to the Post Office.

**RESTRICTED PUBLICATIONS**

- When material received for inmates violates MCSO policies, the mail clerk will return the material to the sender or place it in the inmate's property bag.
- Certain publications are banned because of inappropriate content. For a list of all banned publications please click here[1], contact the mailroom or have the inmate request a copy of the banned publications list as this list changes on a regular basis.
- All other periodicals will be censored for inappropriate content before being sent to an inmate. Periodicals deemed inappropriate will be returned to the publisher. Only two property bags are permitted in property and if/when an inmate exceeds his/her allotted space for property, items will need to be picked up by family/friends within 7 days of notification to the inmate or will be destroyed. Excess Federal inmate property is mailed to an address per the inmate.

---

[1] *See* Exhibit 1, "MCSO Banned Publications." The policy links to a spreadsheet containing a list of banned books entitled "Books not allowed" and a list of banned publications entitled "Magazines not allowed." HRDC's monthly magazine, *Prison Legal News,* is included in the latter list.

7

## UNACCEPTABLE ITEMS IN INMATE CORRESPONDENCE

- Any mail or contents that the mailroom deems as unacceptable will be returned to sender. The following is a list of items that if sent by mail will not be accepted into the MCSO jail facilities. The list includes but is not limited to the following:
    - Money orders, checks, or money (currency)
    - Food
    - Polaroid's, stickers, tape, plastic, wood, cloth, glass, ribbon, metal, magnets, staples, paper clips
    - Illicit or enticing photos
    - Material containing instructions for the manufacture of explosives, drugs, or other unlawful substances
    - Material advocating violence within the facility
    - Material advocating racial, religious, or national hatred
    - Material advocating and encouraging sexual behavior that is criminal or in violation of the facility rules or detrimental to rehabilitation
    - Material that is pornographic, illicit, erotic, and enticing in nature
    - Gang-related material such as signs and/or symbols
    - Material that contains nudity or is sexually explicit in nature
    - Perfume sprayed on the envelope or letter
    - Lipstick
    - Glued contents, paperclips, clasps
    - Sticker address labels not allowed (handwritten only)
    - Gang symbols or drawings
    - Profanity on envelopes
    - Music lyrics printed from the internet that are obscene, violent or deemed inappropriate
    - Newspaper clippings, pamphlets, stamps or envelopes
    - Correspondence sent in cardboard envelopes or bubble envelopes
    - Photocopies of books or magazines will not be accepted
    - No more than ten internet printed pages per envelope will be accepted

**Mail for inmates incarcerated in the Mecklenburg County Jail System must be mailed to the following address:**
**(Inmate's name as it appears on their wristband and PID)**
**P.O. Box 34429**
**Charlotte, N.C. 28234-4429**

- Personal mail in the form of boxes, packages or oversize envelopes will not be accepted. Such items will be returned to the sender
- Do not send money to an inmate at this address. It will be returned to sender

*************

8

Mecklenburg County Sheriff's Office, *Send Mail*, http://www.mecksheriff.com/sendmail.asp (last visited April 18, 2018).

23. *Prison Legal News* appears on Defendants' list of banned magazines.

24. *Criminal Legal News* does not appear on Defendants' list of banned magazines.

25. None of HRDC's books appear on Defendants' list of banned books.

### C. Defendants' Unconstitutional Policies and Practices

26. Since May 2016, Defendants have censored the following mailed materials from HRDC: (1) individually addressed issues of the monthly journal *Prison Legal News*; (2) individually addressed sample issues of *Prison Legal News*; (3) individually addressed issues of the monthly journal *Criminal Legal News*; (4) individually addressed copies of the softcover book *The Habeas Citebook*; (5) individually addressed copies of the softcover book *Prisoners' Handbook*; (6) informational packets; and (7) court opinions.

27. Altogether, since May 2016, Plaintiff can identify at least 144 items of mail which were sent by HRDC to prisoners held in the Mecklenburg County Jail and were censored by Defendants. These include 93 issues of *Prison Legal News*, 13 sample issues of *Prison Legal News*, 2 issues of *Criminal Legal News*, 5 copies of *The Habeas Citebook*, 19 copies of the *Prisoners' Handbook*, 4 informational packets, and 8 court opinions.

28. Such restrictions on written speech sent to prisoners at the Mecklenburg County Jail are not rationally related to any legitimate penological interest and violate HRDC's First Amendment right to communicate its speech with prisoners.

29. In some instances, items were returned to HRDC bearing a stamp indicating "Against Jail Policy" and with handwritten notations from the Jail indicating that HRDC's magazines or books were "not allowed," "banned," or "on banned list." In other instances, items were returned to Plaintiff's office via the "Return To Sender" service of the United States Postal

9

Service and marked with the single word "Refused."

30. On information and belief, a substantial portion of the other magazines, books, and correspondence mailed by HRDC to individual prisoners held in the Mecklenburg County Jail were also censored by Defendants. In fact, Defendants have a policy of excluding mail sent by HRDC to the Jail.

31. On information and belief, Defendants Carmichael, White, Hicks, Hill, and Eason were and are personally involved in creating and/or implementing the policy of censoring communications from HRDC and other publishers. These defendants were and are responsible for training and supervising the staff persons whose conduct has violated HRDC's First Amendment rights.

32. In all of the above instances of censorship of HRDC's communications, Defendants failed to explain the penological justification for their censorship decisions, and in fact, there is no legitimate penological interest served by the above restrictions on HRDC's First Amendment right to communicate its speech with prisoners.

33. In addition, in all of the above instances of censorship, Defendants failed to identify the specific mail policy they relied on, and otherwise failed to give meaningful notice of the censorship—all in violation of Plaintiff's rights under the Fourteenth Amendment.

34. Defendants further failed to provide an opportunity for HRDC to challenge the above instances of censorship or to challenge Defendants' placement of *Prison Legal News* on the banned magazines list—all in violation of HRDC's Fourteenth Amendment rights.

35. Moreover, in each instance of the censorship of HRDC's publications, Defendants violated Plaintiff's Fourteenth Amendment right to equal protection under the law because, on information and belief, Defendants permit publications from similarly situated publishers.

36. Pertaining to monthly issues of *Prison Legal News* and *Criminal Legal News*, Defendants violated Plaintiff's Fourteenth Amendment right to equal protection under the law because, on information and belief, Defendants permit publications from similarly situated publishers of legal news magazines. Under Defendants' policy, "[f]ive (5) books, which includes religious and *legal texts* and five (5) *magazines* only are allowed in [a prisoner's] cell at one time." (Emphasis added). Mecklenburg County Sheriff's Office, *Mecklenburg County Jail Inmate Handbook* 6 (2014), available at http://www.mecksheriff.com/handbook.asp (last visited Apr. 18, 2018) (relevant excerpt attached hereto as Exhibit 2). HRDC's issues of *Prison Legal News* and *Criminal Legal News* can be classified as either legal texts or magazines. They should therefore be treated equally as similarly situated publications and be delivered to the individual prisoners to whom they are addressed at the Jail.

37. The same applies to *The Habeas Citebook* and HRDC's court opinions, which Defendants likewise should have treated as legal texts. On information and belief, Defendants permit publications from similarly situated publishers of legal texts. The delivery of these materials should, at the very least, have been restricted only to those prisoners who already possessed more than 5 books in their cells, according to the Jail's policies. Even then, such prisoners should still have the option to store any excess texts with the rest of their personal property that is not in their cells. In simply rejecting these publications, Defendants violated HRDC's right to equal protection under the law.

38. As it relates to the *Prisoners' Handbook*, Defendants violated HRDC's Fourteenth Amendment right to equal protection under the law because, on information and belief, Defendants permit the delivery of other publications concerning educational and job readiness and reentry. The Defendant's book donation policy, which is available online, shows

how such similarly situated publications are likely being accepted for delivery by the Jail. A copy of this policy, available at http://www.mecksheriff.com/lib_donations.asp (last visited Apr. 18, 2018), is attached hereto as Exhibit 3. The rejection of the HRDC publication therefore constitutes disparate treatment of similarly situated publishers.

39. This disparate treatment was the result of Defendants' intentional and/or purposeful discrimination against HRDC by banning its monthly magazine *Prison Legal News* and not delivering its other publications to the intended recipients. This disparate treatment is not justified by any legitimate penological interest.

40. On information and belief, Defendants Carmichael, White, Hicks, Hill, and Eason were and are personally involved in creating and/or implementing the policies that violate the Fourteenth Amendment rights of HRDC and other publishers. These defendants were and are responsible for training and supervising the staff persons whose conduct has violated HRDC's Fourteenth Amendment rights.

41. Defendants' policies, practices, and customs are unconstitutional, both facially and as applied to HRDC.

42. Defendants' censorship policies, practices, and customs have had a chilling effect on HRDC's future speech and expression directed toward prisoners held in the Mecklenburg County Jail. Defendants' actions have forced HRDC to expend its limited resources vindicating its constitutional rights, rather than furthering its mission in other ways. Additionally, by censoring HRDC's materials, prisoners who would otherwise subscribe to *Prison Legal News* will not do so, knowing that the publication will not be delivered.

43. Plaintiff will continue to mail copies of its books and other publications to subscribers, customers, and other individuals imprisoned at the Mecklenburg County Jail, but

12

Case 3:18-cv-00218-GCM   Document 1   Filed 04/24/18   Page 12 of 19

seeks the protection of this Court to ensure that the materials are delivered and, if not, that due process is afforded to the Plaintiff so it may challenge the basis for any censorship.

### D. Defendants' Unconstitutional Mail Policy and Practice is Ongoing

44. As a result of Defendants' actions described above, HRDC has suffered damages, and will continue to suffer damages, including, but not limited to: the violation of HRDC's constitutional rights; the impediment of HRDC's ability to disseminate its political message; frustration of HRDC's non-profit organizational mission; diversion of resources; loss of potential subscribers and customers; an inability to recruit new subscribers and supporters; the loss of reputation; and the costs of printing, handling, mailing, and staff time.

45. Defendants' actions and inactions were and are motivated by ill motive and intent, and were and are all committed under color of law and with reckless or callous indifference toward HRDC's rights.

46. Defendants, and their agents, are responsible for or personally participated in creating and implementing these unconstitutional policies, practices, and customs, or for ratifying or adopting them. Further, Defendants are responsible for training and supervising the staff persons whose conduct has injured and continues to injure HRDC.

47. Defendants' unconstitutional policy, practices, and customs are ongoing, continue to violate HRDC's rights, and are the moving force behind the constitutional violations at issue in this case. Defendants' unconstitutional policy, practices, and customs will continue unless enjoined. As such, Plaintiff has no adequate remedy at law.

48. HRDC is entitled to injunctive relief prohibiting Defendants from refusing to deliver its monthly magazine *Prison Legal News*, sample issues of *Prison Legal News*, monthly issues of *Criminal Legal News,* books, informational brochure packets, and court opinions

without any legal justification, prohibiting Defendants from censoring mail without due process of law, and prohibiting Defendants from denying HRDC equal protection under the law by not delivering its publications.

## V. CLAIMS

### Count I—42 U.S.C. § 1983
### Violation of the First Amendment

49. HRDC re-alleges and incorporates the allegations of Paragraphs 1 through 48 of the Complaint as if fully set forth herein.

50. The acts described above constitute violations of HRDC's rights, the rights of other correspondents who have attempted to or intend to correspond with prisoners at the Jail, and the rights of prisoners confined at the Jail, under the First Amendment of the United States Constitution.

51. HRDC has a constitutionally protected liberty interest in communicating with incarcerated individuals by sending books, information packets, and other publications to them via U.S. Mail, a right clearly established under existing case law.

52. Defendants' policies and practices described herein do not advance any legitimate government interest, and Defendants have identified no such interest to HRDC. Even if Defendants had identified such an interest, Defendants' policies and practices have no valid, rational connection to such an interest.

53. HRDC has no alternative means of communicating the material in its publications and correspondence with the prisoners held at the Mecklenburg County Jail.

54. Allowing HRDC to exercise its First Amendment rights to communicate with incarcerated individuals would have no meaningful adverse impact on guards, other inmates, or on the allocation of resources at the Mecklenburg County Jail.

55. There are obvious, easy alternatives to Mecklenburg County Jail's blanket censorship policy. These alternatives would protect HRDC's First Amendment rights.

56. The conduct of Defendants was objectively unreasonable and was undertaken intentionally and/or with reckless or callous indifference toward the rights of HRDC and the prisoners to whom HRDC's publications and correspondence have been addressed.

57. HRDC's injuries and the violations of its constitutional rights were directly and proximately caused by the policies and practices of Defendants, and those policies were the moving force behind the violations.

58. The acts described above have caused damages to HRDC, and if not enjoined, will continue to cause damage to Plaintiff.

59. HRDC seeks declaratory and injunctive relief against all Defendants in their official capacities.

60. HRDC seeks nominal and compensatory damages against all defendants in their official and individual capacities, and punitive damages against all Defendants in their individual capacities.

### Count II—42 U.S.C. §1983
### Violation of the Fourteenth Amendment (Procedural Due Process)

61. HRDC re-alleges and incorporates the allegations of Paragraphs 1 through 60 of the Complaint as if fully set forth herein.

62. The acts described above constitute violations of HRDC's rights, the rights of other correspondents who have attempted to or intend to correspond with prisoners at the Jail, and the rights of prisoners confined at the Jail, under the Fourteenth Amendment of the United States Constitution.

63. HRDC has a right under the Due Process Clause of the Fourteenth Amendment to

15

Case 3:18-cv-00218-GCM   Document 1   Filed 04/24/18   Page 15 of 19

receive notice and an opportunity to object and/or appeal Defendants' decisions to prevent Plaintiff's mail from reaching prisoners held in the Mecklenburg County Jail, a right clearly established under existing case law.

64. Defendants' policy and practice of censoring HRDC's magazines and books fails to provide Plaintiff with individualized notice of the censorship or an opportunity to be heard.

65. The conduct of Defendants was objectively unreasonable and was undertaken intentionally and/or with reckless or callous indifference toward the rights of HDRC.

66. HRDC's injuries and the violations of its constitutional rights were directly and proximately caused by the policies and practices of Defendants which were the moving force behind the same.

67. The acts described above have caused damages to HRDC, and if not enjoined, will continue to cause damage to Plaintiff.

68. HRDC's seeks declaratory and injunctive relief against all Defendants in their official capacities.

69. HRDC seeks nominal and compensatory damages against all Defendants in their official and individual capacities, and punitive damages against all Defendants in their individual capacities.

### Count III—42 U.S.C. §1983
### Violation of the Fourteenth Amendment (Equal Protection)

70. HRDC re-alleges and incorporates the allegations of Paragraphs 1 through 69 of the Complaint as if fully set forth herein.

71. By placing *Prison Legal News* on the banned magazines list and censoring the magazine, while permitting publications from similarly situated publishers, Defendants intentionally and/or purposefully discriminate against HRDC, thereby violating Plaintiff's equal

16

protection rights as guaranteed by the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983.

72. The conduct of Defendants was objectively unreasonable and was undertaken intentionally and/or with reckless or callous indifference toward the rights of HRDC.

73. HRDC's injuries and the violations of its constitutional rights were directly and proximately caused by the policies and practices of Defendants which were the moving force behind the same.

74. The acts described above have caused damages to HRDC, and if not enjoined, will continue to cause damage to Plaintiff.

75. HRDC seeks declaratory and injunctive relief against all Defendants in their official capacities.

76. HRDC seeks nominal and compensatory damages against all Defendants in their official and individual capacities, and punitive damages against all Defendants in their individual capacities.

### VI. Request for Relief

WHEREFORE, the Plaintiff, HRDC, respectfully requests relief as follows:

77. A declaration that Defendants' policies and practices violate the Constitutional rights of Plaintiff and other senders of mail.

78. A preliminary and permanent injunction preventing Defendants from continuing to censor HRDC's materials, preventing Defendants from denying HRDC notice and an opportunity to challenge any censorship, and providing other equitable relief.

79. Nominal damages for each violation of HRDC's rights by the Defendants.

80. Compensatory damages in an amount to be proven at trial.

81. Punitive damages against the individual Defendants in an amount to be proven at trial.

82. Costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988, and under other applicable law.

83. Any other such relief that this Court deems just and equitable.

### VII.  JURY DEMAND

84. HRDC demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Dated: April 24, 2018

Respectfully submitted,

/s/ Paul M. Cox
ELLIS & WINTERS LLP

By: Paul M. Cox, NC Bar # 49146
paul.cox@elliswinters.com
Jonathan D. Sasser, NC Bar # 10028
jon.sasser@elliswinters.com
P.O. Box 33550
Raleigh, NC 27636
Tel: (919) 865-7000
Fax: (919) 865-7010

DAVIS WRIGHT TREMAINE LLP

Bruce E. H. Johnson, WA Bar #7667*
brucejohnson@dwt.com
1201 Third Avenue, Suite 2200
Seattle, WA 98101
Tel: (206) 757-8069
Fax: (206) 757-7069

HUMAN RIGHTS DEFENSE CENTER

Sabarish Neelakanta, FL Bar #26623*
sneelakanta@hrdc-law.org
Masimba Mutamba, FL Bar #102772*
mmutamba@hrdc-law.org
Daniel Marshall, FL Bar # 617210*
dmarshal@hrdc-law.org
P.O. Box 1151
Lake Worth, FL 33460
Tel: (561) 360-2523
Fax: (866) 735-7136

*Attorneys for Plaintiff Human Rights Defense Center*

*Pro hac vice* applications to be filed.