IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
NO. 3:18-cv-218

| | |
|---|---|
| HUMAN RIGHTS DEFENSE CENTER,<br><br>    Plaintiff,<br><br>v.<br><br>IRWIN CARMICHAEL, Sheriff of Mecklenburg County, TELISA E. WHITE, AUJIENA HICKS, DAVID HILL, JEFF EASON and DOES 1-10, all in their official and individual capacities,<br><br>    Defendants. | **DEFENDANTS' RESPONSE TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS COMPLAINT [DOCUMENT 23]** |

### I. THE OFFICIAL CAPACITY CLAIMS AGAINST ALL DEFENDANTS EXCEPT SHERIFF CARMICHAEL ARE REDUNDANT AND SHOULD BE DISMISSED

The Plaintiff's contention that the official capacity claims against all Defendants should remain since "HRDC has not sued any entity in this case" [Document 23, p. 5], is misplaced. A suit against the Defendants in their official capacities constitutes a suit against the Mecklenburg County Sheriff's Office. *See Layman ex. rel. Layman v. Alexander*, 343 F.Supp.2d. 483, 487 (W.D.N.C. 2004) (official capacity claims "constitute a claim against the entity for which the three Defendants are agents therefor, here the Haywood County Sheriff's Department.") It is also well- established that when a Plaintiff asserts a cognizable official capacity claim against a Sheriff in his official capacity, claims against other

officers in their official capacities should be dismissed. *Id*. at 488 ("[d]ue to the Plaintiff having asserted a claim against Haywood County Sheriff's Department through the official capacity claim against Sheriff Alexander, identical claims against the Sheriff's Department through official capacity claims against Officers Holland and Trull are redundant and, therefore, are dismissed"); *Gantt v. Whitaker* 203 F.Supp.2d 503, 508 (M.D.N.C. 2002) ("because Plaintiff has stated a cognizable claim against the Sheriff's Office by virtue of his official capacity claim against Sheriff Whitaker, Plaintiff's official capacity claim against Whitesides is redundant and is dismissed"); *Ramsey v. Schauble*, 141 F.Supp.2d. 584, 591 (W.D.N.C. 2001) ("[b]ecause the Plaintiff has brought a cognizable official capacity claim against the Defendant Sheriff, his official capacity claim against Deputy Schauble is redundant and shall be dismissed.").

Last, Plaintiff's contention that the official capacity claims should remain to allow for prospective injunctive relief is without merit. The Consent Decree[1] provides that the decree "shall be binding upon and inure to the benefit of the Sheriff of Mecklenburg County, Irwin Carmichael in his official capacity, and his respective successors and assigns." [Document 18, p. 4 ¶ 8].[2] The Sheriff, not

---

[1] The Plaintiff is correct that *Prison Legal News* was removed from the banned list. [Document 23, n. 2]. However, inmates began receiving *Prison Legal News* on April 1, 2018, prior to this suit being filed.

[2] Garry McFadden will replace Irwin Carmichael as Sheriff of Mecklenburg County after the November 6, 2018 election.

individual employees, is solely responsible for actions of the Sheriff's Office. *See* N.C.G.S. § 162-24 ("[t]he sheriff may not delegate to another person the final responsibility for discharging his official duties" but may appoint others to assist him.")

As a result, the official capacity claims against all Defendants except Sheriff Carmichael should be dismissed.

## II. THE DEFENDANTS ARE ENTITLED TO DISMISSAL OF THE EQUAL PROTECTION CLAIM

In its response, the Plaintiff fails to demonstrate how their Complaint can be construed to support the allegations that it was treated differently due to discriminatory animus. To state a *Monell* claim for an Equal Protection violation, the Plaintiff must plead facts that allow the Court to draw the reasonable inference that the Defendants "maintained a policy, custom, or practice of intentional discrimination against a class of persons to which [the plaintiff] belong[s]." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

While the Plaintiff sets forth numerous facts to demonstrate that it was treated differently than other magazines [Document 23, p. 7], the Plaintiff simply alleges that this difference "resulted from Defendants' intentional and/ or purposeful discrimination because the treatment is not justified by any legitimate interest." [Document 23, p. 8]. Significantly, the Plaintiff makes no allegations

3

that the Defendants harbored any animus towards Plaintiff as a result of its education of the public concerning the destructive nature of racism, sexism, the economic and social costs of prisons to society, its advocacy as a prisoners' rights group, or its focus on criminal justice issues. (Complaint, ¶¶ 10, 18-19) In fact, the allegations that the Defendants' book donation policy allows for delivery of publications concerning similar topics as Plaintiff's books like education and job readiness and reentry [Document 23, p. 3] show that the Plaintiffs' allegations concerning discriminatory intent are not plausible.

As the Plaintiff has failed to allege any facts demonstrating the Defendants' intentional and or purposeful discrimination, its Equal Protection claim shoud be dismissed. *See e.g. In Re Kemp*, 894 F.3d. 900 (8th Cir. 2018) ("[t]o state a plausible equal-protection violation, Judge Griffen also must allege an intent to discriminate. [citation omitted].... Instead, he makes conclusory allegations that he was 'afforded less favorable terms and conditions of his employment with the State of Arkansas on account of his race, than similarly situated white judges.' This is insufficient to establish racial animus."); *Vidro v. Erfe*, 2018 WL 3302593 at * 4 (D Conn. 2018) (dismissing Equal Protection claim where Plaintiff "has not alleged facts that demonstrate that he was treated differently from similarly situated inmates, or that the reason for different treatment was based on

4

"impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure.")

### III. THE DEFENDANTS ARE ENTITLED TO DISMISSAL OF THE INDIVIDUAL CAPACITY CLAIMS AGAINST THEM

#### A. SUPERVISORY LIABILITY REQUIRES MORE THAN AUTHORITY OR SUPERVISORY RANK

The Plaintiff's response simply alleges that "[a]s jail officials, each of the individual Defendants were and are *personally involved* in the creation and continuing implementation, through their subordinates, of the jails' policies that continue to violate HRDC's free speech, due process, and equal protection rights." (emphasis in original) [Document 23, p. 9]. However, simply alleging "personal involvement", without any factual support, does not state a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

The Plaintiff's response claims that personal involvement can be shown by the responsibilities of the individual Defendants [Document 23, pp. 9-10], and their titles as Sheriff, Facility Commanders, and Captains. *Id.* However, simply alleging that the Sheriff is the "final policymaking authority for the jails,"[3] that White and Hill are "responsible for implementing the challenged inmate jail policies", and Hicks and Eason "are responsible for the Jail's operations" [Document 23, pp. 9-10] does not create individual liability without a showing

---

[3] This allegation would support an official capacity *Monell* claim, not an individual capacity claim.

personal involvement. If it could, all supervisory jail officials could be sued in their individual capacities for any constitutional violations at the Jail. As set forth in Defendants' motion, individual liability under § 1983 must be based upon personal responsibility. *Ashcroft v. Iqbal*, 556 U.S. 662, 677, 129 S.Ct. 1937, 1949 (2009) ("each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.")

Indeed, other than setting forth the Defendants' duties and labeling them as having a "supervisory role", the Plaintiff makes no factual allegations about the individual Defendants. [Document 23, p. 9]. For instance, there are no allegations as to who created the jail policy, who instructed that it be implemented to allegedly exclude only Plaintiff's publications, or any prior notice received by any of the Defendants.[4] The Plaintiff's theory that liability must ensue, based simply upon the Defendants' general responsibility and duties, must therefore fail. *See Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir.1995) (general responsibility for supervising operations of prison is insufficient to establish personal involvement required to support liability); *Rosen v. Palito,* 2015 WL 4665628 at * 5 (D. Vt. 2015) (Plaintiff's contention that "Commissioner Pallito is responsible for overseeing policies and procedures including inmates' mental health issues and

---

[4] The Plaintiff's citation to *Taylor v. Mecklenburg County Sheriff's Office*, No. 3:17-cv-208 (W.D.N.C. 2017) [Document 23, p. 10], for the notion that the Defendants had knowledge of the restriction on *Prison Legal News* is misplaced as only Sheriff Carmichael is a Defendant in both cases.

6

Case 3:18-cv-00218-GCM   Document 25   Filed 07/26/18   Page 6 of 12

disciplinary actions ... [and is] responsible for the actions taken on his behalf"…echo a theory of respondeat superior, which in some contexts is a valid basis for supervisor liability, but fails as a matter of law in a Section 1983 action.")

In addition, a defendant may not be held liable merely because of his or her supervisory position. *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996). *See also Pembaur v. City of Cincinnati*, 475 U.S. 469, 479, 106 S.Ct. 1292, 1298 (1986) (noting that "§ 1983 could not be interpreted to incorporate doctrines of vicarious liability"); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) ("mere linkage in the prison chain of command is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim.") (internal citations omitted); *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir.1985) ( "proof of 'linkage in the prison chain of command' is [also] insufficient" to demonstrate personal liability); *accord Saxon v. Attica Medical Dep't*, 468 F.Supp.2d 480, 482 (W.D.N.Y.2007).

## B. THE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY BECAUSE THE RIGHTS AT ISSUE WERE NOT CLEARLY ESTABLISHED

The Plaintiffs' contention that its "First Amendment and equal protection rights" are clearly established, and therefore the Defendants are not entitled to qualified immunity [Document 23, p. 11], is flawed for several reasons.

First, the Plaintiff discusses "clearly established law" at a high level of generality instead of focusing on the particularized facts of this case. The Supreme Court has cautioned lower courts "not to define clearly established law at a high level of generality." *Ashcroft v. Al-Kidd*, 563 U.S. 731, 742, 131 S.Ct. 2074, 2084 (2011). The clearly established law must be 'particularized' to the facts of the case. *White v. Pauly*, ––– U.S. ––––, 137 S.Ct. 548, 552 (2017) (per curiam). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 2156 (2001). If the right was not "clearly established" in the "specific context of the case," then the law affords immunity from suits. *Id*.

Rather than taking "a far too narrow view of what must be shown before rights can be clearly established" as Plaintiff contends [Document 23, p. 12], the Defendants assessed the "clearly established" prong in "the context of the specific

facts of this case." *Merchant v. Bauer*, 677 F.3d 656, 665 (4th Cir. 2012) (internal citations omitted).

Plaintiff's citation to *Prison Legal News v. Stolle*, does not change this analysis. [Document 23, p. 13]. First, *Stolle* is from another judicial district within the Fourth Circuit, which has no effect on the "clearly established" prong because courts look at whether the law has "been authoritatively decided by the Supreme Court, the appropriate United States Court of Appeals, or the highest court of the state." *Wilson v. Layne*, 141 F.3d 111, 114 (4th Cir. 1998) (citation omitted). Second, the *Stolle* court addressed a different issue than this case. The *Stolle* court found that the bar of publications that were "offensive" allowed for view point based censorship. 2105 WL 1487190 at * 5.

The Defendants did not argue that to be "clearly established", a "a case [must] involve[] the same claims brought by the same plaintiff in the same jurisdiction." [Document 23, p. 12]. The Defendants acknowledge that there need not be a case directly on point; however, "existing precedent must have placed the statutory or constitutional question beyond debate." *Cannon v. Village of Bald Head, Island, North Carolina*, 891 F.3d 489, 497 (4th Cir. 2018) (internal citations omitted). Given the lack of "a consensus of cases of persuasive authority" from other jurisdictions, a reasonable officer in the Defendants' positions would not

have known their actions were unlawful. *Booker v. S.C. Dep't of Correction*, 855 F.3d 533, 538–39 (4th Cir. 2017) (internal citation omitted).

Clearly, the law concerning censorship of books and other publications at jails is far from clear. (Motion to Dismiss, pp. 20-1). Just recently, a district court in Virginia applied the *Turner* test in a First Amendment suit, and held that the prison authorities did not violate the First Amendment. *See Rose v. Higgs*, 2018 WL 3301647 at * 10 (E.D.Va. 2018) (ruling that prison's policy of prohibiting inmates' receipt of printed internet material satisfied *Turner*). Indeed, the fact that there are numerous court rulings on these issues, but none specifically addressing the context of the specific facts of this case, demonstrate precisely why the Defendants are entitled to qualified immunity. The contours of a right must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right.' " *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 313 (4th Cir. 2006) (internal citation omitted)

When the right alleged to be violated is defined at the level of specificity required by the Supreme Court, there are no cases sufficiently analogous to the present case to have placed the Defendants on such notice that their conduct was unlawful. Therefore, the precedent at the time did not offer sufficient guidance to place "every reasonable offic[er]" in position on notice that their conduct would violate the Amendment. *Ashcroft*, 563 U.S. at 741, 131 S.Ct. at 2083 (citation and

internal quotation marks omitted). As a result, the Defendants are entitled to qualified immunity.

## IV. CONCLUSION

For the foregoing reasons, and those set forth in the Defendants' motion to dismiss, the Defendants respectfully request that their partial motion to dismiss be granted.

Respectfully submitted this the 26th day of July, 2018.

           **WOMBLE BOND DICKINSON (US) LLP**

           /s/Sean Perrin
           Sean Perrin
           N.C. State Bar No. 22253
           301 S. College Street, Suite 3500
           Charlotte, North Carolina 28202
           Telephone: (704) 331-4992
           Facsimile: (704) 338-7814
           Email: Sean.Perrin@wbd-us.com
           *Attorney for Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that on this day, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification to:

Steven A. Scoggan
Jonathan D. Sasser
steven.scoggan@elliswinters.com
jon.sasser@elliswinters.com

Sabarish Neelakanta
sneelakanta@hrdc-law.org

I hereby certify that the foregoing was mailed to:

Bruce E. H. Johnson
DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, WA 98101
Tel: (206) 757-8069
Fax: (206) 757-7069
brucejohnson@dwt.com

Masimba Mutamba
Daniel Marshall
HUMAN RIGHTS DEFENSE CENTER
P.O. Box 1151
Lake Worth, FL 33460
Tel: (561) 360-2523
Fax: (866) 735-7136
sneelakanta@hrdc-law.org
mmutamba@hrdc-law.org
dmarshal@hrdc-law.org

This the 26th day of July, 2018.

/s/Sean Perrin
Sean Perrin