# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:18-CV-218-GCM

| | |
|---|---|
| HUMAN RIGHTS DEFENSE CENTER, | ) |
| Plaintiff, | ) |
| v. | ) ORDER |
| IRWIN CARMICHAEL, SHERIFF OF MECKLENBURG COUNTY, ET AL., | ) |
| Defendants. | ) |

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss ("Motion") (Doc. No. 14) filed May 30, 2018. The Court, having carefully considered the briefs and materials submitted in support and in opposition of the Motion, the Complaint (Doc. No. 1), and being otherwise fully advised, finds and orders as follows:

## I.     FACTUAL BACKGROUND

On April 24, 2018, Plaintiff, the Human Rights Defense Center ("HRDC"), filed its Complaint against Defendants Irwin Carmichael, Telisa White, Aujiena Hicks, David Hill, and Jeff Eason in their individual and official capacities. (Doc. No. 1). Each of the Defendants hold supervisory positions with the Mecklenburg County Sheriff's Office ("MCSO") and at the Mecklenburg County Jail ("MCJ"), and Defendant Carmichael is the Sheriff of Mecklenburg County. (Doc. No. 1, at ¶¶ 12, 13, 14, 15). Defendants White and Hill are responsible for the implementation of jail policies in Mecklenburg County, including inmate mail policies and the hiring, training, and supervision of the personnel who interpret and apply inmate mail policies. (Doc. No. 1, at ¶¶ 12, 14). Defendants Hicks and Eason report to Defendants White and Hill and

supervise jail operations, including the mailroom and the routing of incoming prisoner mail. (Doc. No. 1, at ¶¶ 13, 15).

Plaintiff sends various publications to incarcerated persons at the MCJ, such as *Prison Legal News*, *Criminal Legal News*, *The Habeas Citebook*, and *Prisoner's Handbook*. (Doc. No. 1, at ¶¶ 1, 18, 19, 20, 21). Defendants rejected delivery of at least 144 copies of those and other publications and placed *Prison Legal News* on Defendants' list of banned magazines. (Doc. No. 1, at ¶ 27). Defendants did not explain why *Prison Legal News* was banned or why they had rejected delivery of the other publications, and Defendants did not give Plaintiff an opportunity to appeal the rejections or the decision to ban *Prison Legal News*. (Doc. No. 1, at ¶¶ 32-34).

Defendants accept some legal texts, magazines, and other publications that Plaintiff alleges are similar to its publications. (Doc. No. 1, at ¶¶ 38-39). However, Defendants prohibit mail that is "in violation of the [MCSO's] rules, or detrimental to rehabilitation." (Doc. No. 1, at p. 8). For example, the MCSO's rules prohibit illicit or enticing photos, material containing nudity, and stamps. (Doc. No. 1, at p. 8).

## II. STANDARD OF REVIEW

"Federal Rule of Civil Procedure 8(a)(2) requires . . . a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation and internal quotations omitted). Fed. R. Civ. P. 12(b)(6) provides an avenue to attack a complaint where the "grounds" of a plaintiff's "entitle[ment] to relief" are insufficient. *Id.* (citation omitted). When faced with a motion to dismiss under Rule 12(b)(6), the Court must "accept as true all well-pleaded allegations and . . . view the complaint in a light most favorable to the plaintiff." *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). A court then

"determine[s] whether [those allegations] plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). However, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. LLP*, 213 F.3d 175, 180 (4th Cir. 2000). Further, a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quotations and citation omitted).

## III. DISCUSSION

Plaintiff has asserted three claims against Defendants: (1) violation of the First Amendment for censoring Plaintiff's publications, (2) violation of the Fourteenth Amendment's Due Process Clause for failure to provide notice with regard to the decision to censor Plaintiff's publications, and (3) violation of the Fourteenth Amendment's Equal Protection Clause for treating Plaintiff's publications differently than similarly situated publications. (Doc. No. 1, at ¶¶ 49-76). Defendants move to dismiss all of Plaintiff's claims, except for Plaintiff's First Amendment and Due Process Clause claims against Sheriff Irwin Carmichael in his official capacity. (Doc. No. 15, at 2). Defendants provide three grounds for dismissal. First, Defendants argue that Plaintiff's "official capacity claims against all Defendants except Sherriff Carmichael are redundant because the Complaint states a cognizable claim against Sheriff Carmichael in his official capacity." (Doc. No. 15, at 5). Second, Defendants argue that Plaintiff's Equal Protection Clause claim is not supported by factual allegations that the Plaintiff was treated differently for a discriminatory reason. (Doc. No. 15, at 6). Third, Defendants argue that the individual capacity claims against them should be dismissed both because Plaintiff does not allege that Defendants were personally involved in the deprivation of Plaintiff's rights and because Defendants are entitled to qualified immunity. (Doc. No. 15, at 9, 14). The Court addresses each argument in turn.

### A. Plaintiff's Official Capacity Claims

Defendants argue that Plaintiff's official capacity claims against Defendants Telisa White, Aujiena Hicks, David Hill, Jeff Eason, and Does 1-10 are redundant because the Complaint states a cognizable official capacity claim against Sheriff Carmichael. (Doc. No. 15, at 5). Claims against defendants in their official capacity "constitute . . . claim[s] against the entity for which [they] are agents therefor." *Layman v. Alexander*, 343 F.Supp. 2d 483, 488 (W.D.N.C. 2004) (citing *Gantt v. Whitaker*, 203 F. Supp.2d 503, 508 (M.D.N.C. 2002), *aff'd*, 57 Fed.Appx. 141 (4th Cir. 2003)). It follows that where a plaintiff asserts official capacity claims against multiple defendants acting as agents for the same entity, dismissal of the redundant claims is appropriate. *Id.* (Dismissing official capacity claims against two officers where a plaintiff had also asserted a claim against a sheriff's department through an official capacity claim against the department's sheriff.) (citing *Gantt*, 203 F.Supp.2d at 508; *Ramsey v. Schauble*, 141 F. Supp.2d 584, 591 (W.D.N.C. 2001)). Here, Defendants White, Hicks, Hill, Eason, and Does 1-10 are or were employed by the MCSO and Defendant Carmichael is the Sheriff of Mecklenburg County. (Doc. No. 1, at ¶¶ 12, 13, 14, 15, 16). Thus, Plaintiff's official capacity claims against all Defendants other than Defendant Carmichael are redundant and hereby **DISMISSED**.

### B. Plaintiff's Equal Protection Claims

Defendants argue that dismissal of Plaintiff's equal protection claim is appropriate because Plaintiff makes no factual allegations that its alleged unequal treatment was due to intentional or purposeful discrimination. (Doc. No. 15, at 6). In order to survive a motion to dismiss an equal protection claim, a plaintiff "must plead sufficient facts to demonstrate plausibly that he was treated differently from others who were similarly situated and that the unequal treatment was the result of discriminatory animus." *Equity in Athletics, Inc. v. Department of Education*, 639 F.3d.

91, 108 (4th Cir. 2011). In other words, a plaintiff must set forth "specific non-conclusory factual allegations that establish an improper [discriminatory] motive." *Williams v. Hansen*, 326 F.3d. 569, 584 (4th Cir. 2003).

Here, Plaintiff alleges that Defendants permitted publications from similarly situated publishers of legal news and job readiness publications but censored or banned Plaintiff's publications. Plaintiff's only allegations that those actions were motivated by improper *discrimination* were its conclusory statements that the unequal treatment was "undertaken intentionally" and that it was "the result of Defendants' intentional and/or purposeful discrimination against Plaintiff." (Doc. No. 1, at 12, 16). While Plaintiff seeks to circumvent that deficiency by citing to various portions of its Complaint alleging that "Defendants purposefully discriminated against" Plaintiff, each of those allegations are that Plaintiff's publications were treated *unequally*, not that such treatment resulted from purposeful discrimination. (Doc. No. 23, at 7, 8).

Even to the extent that Plaintiff's allegations of unequal treatment also constitute allegations of purposeful discrimination, those allegations ask this Court to adopt unreasonable and unwarranted inferences. For example, Plaintiff argues that its publications were magazines, legal texts, and education and job readiness books, all of which are permitted by the MCJ's policies. (Doc. No. 23, at 7, 8). However, the censored publications Plaintiff attached to its motion for preliminary injunction contain advertisements for nude and semi-nude pictures, (Doc. Nos. 6-3, at 18, 35, 47, 52, 62, 68; 6-4, at 19, 22, 24, 26, 37, 46, 60, 62; 6-5, at 7, 12), which are prohibited by the MCJ's mail policy, (Doc. No. 1, at 8) (prohibiting mailed items containing "[m]aterial that is pornographic, illicit, erotic, and enticing in nature."). Because Plaintiff fails to set forth any factual allegations showing how the form and contents of its censored materials were in

compliance with the MCJ's mail policy, this Court declines to accept as true the unwarranted inference that Defendants' banning and censorship of Plaintiff's publications are evidence of discriminatory intent. *See E. Shore Mkts., Inc. v. J.D. Assocs. LLP*, 213 F.3d 175, 180 (4th Cir. 2000). Thus, Plaintiff fails to make specific, non-conclusory allegations that establish a discriminatory motive and Plaintiff's equal protection claim is **DISMISSED**. *See Williams v. Hansen*, 326 F.3d. 569, 584 (4th Cir. 2003).

### C. Plaintiff's Individual Capacity Claims

Defendants argue that they are entitled to dismissal of all individual capacity claims against them because (1) Defendants are not alleged to have been personally involved in the deprivation of the Plaintiff's rights and (2) Defendants are entitled to qualified immunity.[1] (Doc. No. 15, at 9-15).

1. Personal Involvement

Personal liability under § 1983 is "based upon each defendant's own constitutional violations." *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir.2001) (internal citation omitted). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff . . . must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (citation omitted). In other words, to establish liability under § 1983, a plaintiff must affirmatively show that the individual defendants "acted personally in the deprivation of the plaintiff's rights." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (internal citations omitted). Personal deprivation can, however, be found on the

---

[1] Because the Court has dismissed Plaintiff's equal protection claim in its entirety and dismisses Plaintiff's First Amendment and due process claims against Defendants in their individual capacity below, the Court need not consider whether Defendants are entitled to qualified immunity from Plaintiff's claims against Defendants in their individual capacity.

part of "supervisory officials . . . for the constitutional injuries inflicted by the[ir] subordinates." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994) (citing *Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984), *cert. denied*, 470 U.S. 1035 (1985)). "[T]hat liability is not premised upon *respondeat superior* but upon 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Id.* (citation omitted and emphasis added).

Ultimately, supervisory liability is determined 'by pinpointing the persons in the decision[-]making chain whose deliberate indifference permitted the constitutional abuses to continue unchecked. *Id.* (citation omitted). The Fourth Circuit has set forth three elements for making that determination: "(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices," and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Id.* (citations omitted).

With respect to Plaintiff's First Amendment claim, Plaintiff appears to argue that its constitutional injury was the banning and censoring of its publications. (Doc. No. 23, at 10). While it is clearly established that publishers have a First Amendment right to communicate with inmates, *see Thornburgh v. Abbott*, 490 U.S. 401, 407–08 (1989), courts give substantial deference to prison officials when reviewing prison policies, *Lovelace v. Lee*, 472 F.3d 174, 200 (4th Cir. 2006). That deference is "achieved in part through application of a reasonableness test that is less restrictive than the test ordinarily applied to alleged infringements of fundamental rights." *Id.* (citing *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). Put simply, a "prison regulation that abridges

inmates' constitutional rights is 'valid if it is reasonably related to legitimate penological interests.'" *Turner v. Safley*, 482 U.S. 78, 84 (1987). When making that determination, courts consider:

> (1) whether there is a "valid, rational connection" between the prison regulation or action and the interest asserted by the government, or whether this interest is "so remote as to render the policy arbitrary or irrational"; (2) whether "alternative means of exercising the right . . . remain open to prison inmates" . . . ; (3) what impact the desired accommodation would have on security staff, inmates, and the allocation of prison resources; and (4) whether there exist any "obvious, easy alternatives" to the challenged regulation or action, which may suggest that it is "not reasonable, but is [instead] an exaggerated response to prison concerns."

*Id.* (citing *Turner*, 482 U.S. at 89-92).

While Plaintiff alleges that Defendants rejected delivery of 144 publications from Plaintiff and placed one publication on a banned magazines list (Doc. No. 1, at ¶¶ 27, 29), Plaintiff's allegations that Defendants' actions were not related to legitimate penological interests are merely conclusory. For example, Plaintiff alleges that the MCJ's restrictions "do not advance any legitimate government interest" and that, even if they did, they have no "valid, rational connection to such an interest." (Doc. No. 1, at ¶ 52). Further, Plaintiff alleges it "has no alternative means of communicating the material in its publications," that "[a]llowing [Plaintiff] to . . . communicate with incarcerated individuals would have no meaningful adverse impact on guards . . . or on the allocation of resources at [MCJ]," that "[t]here are obvious, easy alternatives to [MCJ's] blanket censorship policy" that "would protect [Plaintiff's] First Amendment rights," and that Defendants' conduct was "objectively unreasonable." (Doc. No. 1, at 14, 15). Plaintiff alleges no specific facts in support of those assertions, and the mere recitation of the *Turner* factors does not state a plausible claim for relief. *See Iqbal*, 556 U.S. at 678. Thus, Plaintiff's First Amendment claims against all Defendants in their individual capacity are **DISMISSED**.

With respect to Plaintiff's procedural due process claim, Defendants argue that "Plaintiff's allegations fall woefully short of demonstrating supervisory liability" because there was no "allegation[] that the individual Defendants knew about any constitutional injury to the Plaintiff." (Doc. No. 15, at 13). Plaintiff responds that Defendants "likely had actual knowledge." (Doc. No. 23, at 10). While that conclusory allegation, by itself, is insufficient to state a claim, *see Iqbal*, 556 U.S. at 678, Plaintiff also argues that an earlier case brought by a prisoner against MCSO for censoring Plaintiff's publications gave Defendants actual knowledge of the constitutional injury to Plaintiff, (Doc. No. 23, at 10) (citing *Taylor v. Mecklenburg County Sherriff's Office*, No. 3:17-cv-208 (W.D.N.C. Apr. 18, 2017)). However, Plaintiff does not allege that the censorship complained of in that earlier case is the same censorship complained of here. Thus, Plaintiff does not make an allegation that Defendants had actual knowledge of constitutional injury alleged *in this case*.

Plaintiff argues, in the alternative, that Defendants had constructive knowledge of the constitutional injury because they implemented the mail policies and oversaw subordinates who interpreted and applied the mail policies. (Doc. No. 23, at 9) (citing Doc. No. 1, at ¶¶ 11, 12, 13, 14, 15). However, while Plaintiff did allege that Defendants did not receive notice or an opportunity to appeal Defendants' censorship decisions, Plaintiff never alleged that it was denied process *because the MCJ mail policy required it*. (Doc. No. 1, at ¶ 33). Plaintiff may not allege constructive knowledge of a constitutional injury simply by virtue of Defendants' involvement in the implementation of policies that Plaintiff never alleged caused that injury. For the same reason, Plaintiff's theory of supervisory liability based merely on the advancement of mail policy itself fails. (Doc. No. 23, at 10) (citing *OSU Student All. v. Ray,* 699 F.3d 1053, 1076 (9th Cir. 2012) ("Advancing a policy that requires subordinates to commit constitutional violations is always

enough for § 1983 liability . . . so long as the policy proximately causes the harm—that is, so long as the plaintiff's constitutional injury in fact occurs pursuant to the policy.").

Plaintiff also argues that Defendants are liable for violating Plaintiff's "due process rights by failing to put in place a policy providing publishers with both . . . notice . . . and an opportunity to appeal the rejection of any publications." (Doc. No. 23, at 11). Plaintiff provides no authority (and the Court is aware of none) showing that liability automatically follows where a party does not have a pre-existing policy in place for providing notice and the opportunity for appeal. Thus, Plaintiff's procedural due process claims against all Defendants in their individual capacities are **DISMISSED**.

## IV. CONCLUSION

Defendants' Motion is **GRANTED**, Plaintiff's official capacity claims against Defendants White, Hicks, Hill, Eason, and Does 1-10 are **DISMISSED**, Plaintiffs equal protection claim is **DISMISSED** in its entirety, and Plaintiff First Amendment and procedural due process claims against all Defendants in their individual capacities are **DISMISSED**. Plaintiff's First Amendment and procedural due process claims against Sheriff Carmichael in his official capacity remain.

**SO ORDERED**.

Signed: December 27, 2019

Graham C. Mullen
United States District Judge